AMIE, APPELLEE, *v.*
GENERAL MOTORS CORPORATION, APPELLANT.

(No. 40492—Decided June 19, 1980.)

*Cooper, Spector & Weil Co., L.P.A.,* and *Mr. Gary Spector,* for appellee.

*Baughman & Associates Co., L.P.A.,* and *Mr. Glenn R. Jones,* for appellant.

JACKSON, P. J. This workers' compensation claim was brought by James Amie, the appellee, against his employer, General Motors Corporation, the appellant. This case was heard by the court without a jury and the court held that appellee was entitled to participate in the workers' compensation

fund. The employer has appealed that decision to this court, citing three assignments of error.

*First assignment of error:*

"It was prejudicial error for the court to admit testimony of one Robert Fomby concerning hearsay statements allegedly made by the plaintiff."

Two witnesses testified on behalf of the appellee: the appellee himself and a coemployee, Mr. Robert Fomby.

Mr. Fomby testified on direct examination that on September 23, 1973, he worked with the appellee moving racks (A-Frames) filled with automobile hoods. Each rack held 30 hoods and each hood weighed 100 pounds. There was a bar on each side of the rack; one man worked on each side to move the A-Frame. Mr. Fomby said that the hoods were coated with oil which dripped on the wooden floor, creating a slippery surface. He said that two or three times a month the axle of the rack would become stuck and "you really wouldn't be able to move them."

Appellee's attorney elicited the following testimony from Mr. Fomby on direct examination:

"Q. Do you recall anything happening at about 10:00 o'clock on October [*sic*] 23, 1973?

"A. Yes, I do.

"Q. Could you explain in detail what you recall and what you were doing?

"A. At this particular time we were pulling the A-frame out away from the platform.

"Q. As you described?

"A. As I described. And this particular time, this one set, this one A-frame, wouldn't budge. So we sort of had to yank on it in order to get it out of there. And as we got it out, kept nudging it, we finally got it out.

"He complained of—the guy that was working with me, James Amie, complained of he figured he had snapped something in his back.

"So at that time I told him, 'Why don't you go and tell the foreman and get yourself checked out?'

"* * *

"Q. In the course of the rest of the evening, did Mr. Amie complaint [*sic*] to you about his back?

"A. Yes, he did.

"Q. What did he indicate?

"A. He told me that he figured he had snapped something; something had snapped in his back and it was getting sore. He said he had told the foreman about it."

Appellant's counsel did not object to the foregoing testimony, but pursued the issue by asking the following questions on cross-examination:

"Q. Did you see Mr. Amie slip in the oil?

"A. No, I did not.

"Q. Did you see him pulling on the rack?

"A. Yes, I did.

"Q. Did you have to pull unusually hard on that rack?

"A. Yes, we did.

"Q. How soon after that did he complain to you about his back injury?

"A. Directly after we pulled the rack out."

On redirect examination, appellant finally objected to Fomby's testimony:

"BY MR. G. SPECTOR [claimant's attorney]:

"Q. One last question, Mr. Fomby.

"I want you to clarify whether you actually saw anything unusual happen to Mr. Amie. Did you see, personally, anything happen to Mr. Amie?

"A. At the time I didn't see anything happen because I was in the process — I couldn't watch him and pull the rack at the same time.

"MR. G. SPECTOR: Thank you.

"I have no further questions.

"MR. JONES [employer's attorney]: Your Honor, in view of the testimony just given, I move to strike this witness' testimony. He just stated to us he saw nothing happen.

"THE COURT: Overruled.

"MR. JONES: I have no further questions."

Appellant argues that the trial court committed prejudicial error by admitting the testimony of Robert Fomby concerning the statements made by the appellee. The appellee argues that these statements are admissible under the "spontaneous declaration" exception to the hearsay rule. The "spontaneous declaration" rule is set forth in the syllabus of *Bake* v. *Indus. Comm.* (1939), 135 Ohio St. 627:

"The admissibility of a statement under the doctrine of *res*

*gestae* depends upon its having been spontaneous or impulsive. It need not be strictly contemporaneous with the incident to which it relates, but should be in the nature of an exclamation and not a narrative of a past event."

Fomby's testimony concerning appellee's complaint of back pain immediately after the incident is admissible under *Bake* v. *Indus. Comm., supra*; his testimony concerning appellee's statements later in the evening are not admissible. If the appellant had interposed a timely and appropriate objection, it would have been error for the trial court to admit into evidence testimony concerning the subsequent statements of appellee's injury. The record discloses, however, that appellant waived his objection to the introduction of this hearsay testimony by failing to object to the testimony with "reasonable promptness." *State* v. *McDonald* (1970), 25 Ohio App. 2d 6, 11; *Gates* v. *Dills* (1967), 13 Ohio App. 2d 163, 164-165. Moreover, since evidence of appellee's continuing complaints of pain was merely cumulative evidence of the injury disclosed by appellee's own testimony, we find the admission of this evidence not so prejudicial as to warrant reversal of the judgment in favor of the appellee. This assignment of error is without merit.

*Third assignment of error:*

"It was prejudical error for the trial court to find in favor of the plaintiff when the only evidence introduced by the plaintiff tended to show that he had been injured at work on September 23, 1973 and the employer's records revealed that he had not worked on that date."

Both Mr. Fomby and the appellee testified that appellee was injured on September 23, 1973. Appellant requested the trial court to take judicial notice of the fact that September 23, 1973 was a Sunday, and introduced payroll records indicating that appellee was not paid overtime for the weeks ending September 23, 1973 and September 30, 1973. Appellant argues that the company records "conclusively" establish that appellee was not at work on September 23, 1973, and that it was therefore error for the court to find that appellee was entitled to participate in the workers' compensation fund. (Appellant apparently contends that the verdict was against the manifest weight of the evidence.)

This argument is not well taken for two reasons. First, the

employer's payroll records are not "conclusive" evidence of attendance at work, but merely evidence of attendance, to be taken into account by the trier of fact like any other evidence of attendance. Furthermore, the payroll records are circumstantial evidence of attendance; eyewitness testimony or the claimant's time cards would have constituted more direct evidence. Merely because the cumulative weekly payroll records of the employer disclosed that appellee was not paid for overtime work on Sunday, September 23, 1973, the trial court was not required to find that the appellee did not work on that date.

Second, the exact date of injury is not a necessary element of the claimant's case. *Wills* v. *Indus. Comm.* (1950), 66 Ohio Law Abs. 577; *Indus. Comm.* v. *Motts* (1934), 17 Ohio Law Abs. 642. To recover, a claimant must prove only that he sustained a compensable injury in the course of and arising out of his employment. *Swanton* v. *Stringer* (1975), 42 Ohio St. 2d 356; R. C. 4123.54 and 4123.01(C). Contradictory evidence concerning the date of injury is pertinent only in that it casts doubt on whether an injury occurred at all. The Court of Appeals for Franklin County has held that the claimant may prevail even if doubt exists as to the precise date of injury:

"On the question that the verdict was against the manifest weight of the evidence, we recognize that the evidence supporting claimant is very meager and that there are many attending circumstances which might cast suspicion as to any alleged injuries.
"* * *

"Two witnesses connected with the plant presented apparently very creditable evidence that the claimant was not working in the capacity of night watchman on the date named. However, their testimony did not cover other Sundays, either before or after this date. Under the entire record we are unable to say that the verdict of the jury is against the manifest weight of the evidence.* * *" *Indus. Comm.* v. *Motts, supra,* at 643.

The Court of Appeals for Montgomery County reached the same conclusion, stating in a comparable fact situation:

"This injury may have occurred, if at all, in 1942 or 1943. The witnesses testified on and after Feb. 18, 1948, five or six years after the accident, if it occurred. It is common

knowledge that witnesses entirely truthful may be mistaken in fixing a definite date of occurrence and yet be correct as to the happening of the event.***" *Wills* v. *Indus. Comm., supra,* at 579.

This assignment of error is without merit.

*Second assignment of error:*

"It was prejudicial error for the trial court to find that the plaintiff was entitled to participate for a herniated lumbar disc when the manifest weight of the evidence tended to prove no such condition existed."

Appellee presented evidence that he suffered from two back conditions as a result of his industrial injury: "lumbosacral myofascitis" and "herniated lumbar disc." Appellant claims that the trial court found that appellee was entitled to participate in the workers' compensation fund for both conditions, and that the court's decision allowing this claim for herniated lumbar disc was against the manifest weight of the evidence.

It is undisputed that lumbosacral myofascitis and herniated lumbar disc are separate and distinct conditions. Appellee's expert medical witness defined lumbosacral myofascitis as a low back sprain. One of appellant's expert medical witnesses defined it as a backache. Appellant's other expert medical witness stated that myofascitis is an inflammation of a muscle and its lining, the fascia. A herniated lumbar disc, on the other hand, is an objective, anatomical deformity which can be detected by diagnostic tests such as a myelogram and an electromyograph.

The trial court did not indicate in its final journal entry whether appellee was entitled to participate in the workers' compensation fund for both or only one of the alleged conditions. The journal entry states:

"It is ordered and adjudged that the plaintiff sustained an injury in the course of and arising out of his employment, *said injury* was accidental as defined by law and by reason thereof, plaintiff is entitled to participate in the Ohio State Workers' Compensation Fund." (Emphasis added.)

An appeal of a decision to the Court of Common Pleas involving a workers' compensation claim is governed by the provisions of R. C. 4123.519. This statute provides in pertinent part:

"***The court, or the jury under the instructions of the court, if a jury is demanded, shall determine the right of the claimant to participate or to continue to participate in the fund upon the evidence adduced at the hearing of such action."

The statute does not expressly require the court to specify the condition for which the claimant is entitled to participate in the fund. However, in a recent decision the Ohio Supreme Court held that either the claimant or the employer may appeal an adverse decision of the Industrial Commission with respect to one injury, even though the claim has been allowed for other injuries. *Zavatsky* v. *Stringer* (1978), 56 Ohio St. 2d 386. The court stated therein:

"An order of the Industrial Commission, which either denies or allows a claimant the right to participate in the Workers' Compensation Fund for injury to a specific part or parts of the body involving loss or impairment of bodily functions on the basis that such was or was not the result of a compensable injury, is a decision other than one as to the extent of disability and, thus, pursuant to R. C. 4123.519, may be appealed to the Court of Common Pleas by the claimant in the event of such a denial, or by the employer in the event of such an allowance.
"* * *

"The right of either the claimant or the employer to appeal to the Court of Common Pleas from a decision of the Industrial Commission which is 'other than a decision as to the extent of disability' is not affected by the fact that the claimant is receiving or will receive compensation or benefits for allowed injuries involving losses or impairments of bodily functions other than those which are the subject of the appeal. Such right of appeal may be exercised by either the claimant or the employer, regardless of whether the decision granting or denying the right to so participate is a part of the same order or is part of a prior order which also grants or denies a right to participate for other injuries involving loss or impairment of other bodily functions." *Id.,* at 386-387, paragraphs one and three of syllabus.

A claimant may be entitled to participate in the workers' compensation fund for one condition but not for another condition, depending on the evidence presented at trial. Similarly, an employer may concede that a claimant is entitled to par-

ticipate in the fund for one condition but may contest the allowance of the claim for another condition. Where, in a workers' compensation case, the allowance or disallowance of a claim for two separate and distinct medical conditions is at issue, the trial court must determine whether the claimant is entitled to participate in the fund for each condition.

In the case at bar the language of the final judgment entry does not expressly state whether the trial court found that the claimant was entitled to participate in the fund for lumbosacral myofascitis, herniated lumbar disc, or both. Consequently, we are unable to determine whether the decision of the trial court is against the manifest weight of the evidence with respect to the allowance of the claim for injury resulting from a herniated lumbar disc.

Accordingly, we find merit in the second assignment of error, and the judgment of the trial court is reversed and remanded with instructions to enter judgment specifically determining whether plaintiff-appellee is entitled to participate in the workers' compensation fund for each medical condition which was the subject of the appeal from the Industrial Commission.

Judgment reversed and remanded to the trial judge for further proceedings.

*Judgment reversed*
*and cause remanded.*

PRYATEL and PATTON, JJ., concur.