ENTRY AND OPINION
Appellant, Pittsburgh Corning Corporation ("PCC"), timely appeals[1]
challenging the trial court's admission and exclusion of certain evidence at trial along with a jury instruction. For the reasons set forth below, we affirm the judgment of the trial court.
Plaintiff-appellee, Julia Cicchillo is the widow and executrix of the estate of Joseph Cicchillo. Joseph Cicchillo died at age 79 from mesothelioma and other concurrent causes related thereto.[2] For more than 40 years, on and off, Mr. Cicchillo worked at the Warren, Ohio plant of Republic Steel. During his employment as a welder, plaintiff claims that Mr. Cicchillo contracted malignant mesothelioma as a direct result of his long-term exposure to asbestos from a product manufactured by PCC. In her complaint against PCC, plaintiff asserted product liability claims based on PCC's manufacture of Unibestos, an asbestos-containing pipe covering used in the plant where Mr. Cicchillo worked. Plaintiff's claims were premised upon a failure to warn theory. Plaintiff also asserted a claim for punitive damages.
At trial, plaintiff presented testimony to the jury from numerous co-workers of Mr. Cicchillo, who testified that workers were exposed, on a continual basis, to airborne asbestos. Plaintiff presented expert testimony from Dr. Richard A. Lemen, former Assistant United States Surgeon General. Dr. Lemen told the jury that, during his tenure with the Surgeon General's office, he had visited and observed the conditions at the PCC plants at Tyler, Texas and Port Allegheny, Pennsylvania. Dr. Lemen, testifying about "state of the art" asbestos hazards, told the jury that asbestos was known to be hazardous as early as the 1930's.
Dr. Lemen stated PCC had files containing documents indicating "that the asbestos material that was being used, that fibers did cause respiratory disease and cancer." (Tr. 308.) Dr. Lemen told the jury that over the course of ten years, 1962-1972, PCC was aware of the hazardous nature of its product, but that it "did not" take adequate precautions to protect and warn their employees of the health hazards. (Tr. 314.) Dr. Lemen established that between 1962 and 1972, PCC not only knew about the numerous governmental public health studies being done within its own plants, but that it conducted many of its own studies. (Tr. 385-388.)
Dr. Lemen also described the type of conditions that existed at PCC's plants. The jury heard and saw pictures of the "terrible" dust-conditions that often existed in the plants over extended periods of time. He explained that workers and even persons in the neighboring areas of the plants were exposed to asbestos dust transmitted by air and products leaving the plants.
The doctor also explained the inadequate warnings and precautions taken by PCC. As a major manufacturer of Unibestos and other asbestos-related products, PCC did not provide sufficient plant ventilation systems, it did not require its workers to wear masks or respirators, and it never advised them to remove their work clothes before going home.
Dr. Lemen further testified about the "secondary occupational hazards" that resulted from the extreme dust conditions in the plants and from the dust-laden products that were shipped from the plants. There was evidence that burlap bags used for roses contained asbestos residue and were, by transit, delivered to areas all around the country. The record does not indicate that PCC presented any separate rebuttal evidence to this testimony. The Texas and Pennsylvania plants that Dr. Lemen described are the two facilities that manufactured the asbestos pipe covering that Mr. Cicchillo worked with and around.
Under cross-examination, Dr. Dorset Smith, M.D., confirmed that epidemiological studies done in 1960 linked asbestos exposure and mesothelioma relative to end-users of asbestos products, like Mr. Cicchillo. PCC also presented testimony from Dr. Howard Ayer, M.D., an industrial hygienist, who, on cross, described the different ways that asbestos can become airborne. He testified that, once airborne, the dust, though microscopic, remains in the air "for some period of time."
PCC attempted to introduce evidence of Mr. Cicchillo's service in the United States Navy where, it claims, he was exposed to asbestos through the insulation products used on the naval ship on which he served. PCC maintains that it should have been allowed to present additional evidence that Mr. Cicchillo's fourteen-month service on the naval ship was the real cause of his mesothelioma, not the more than forty years he worked in and around PCC's Unibestos pipe covering product. And when PCC tried to introduce such evidence, the court disallowed it as speculative. The court also refused to disallow the testimony of one Carl Olm, who worked at PCC's Pennsylvania facility and who testified that he was told to destroy certain documents related to the issue of asbestos and its hazards.
Following nine days of trial, all parties reviewed the proposed jury instructions, including two instructions relating to PCC's potential liability in the case. Plaintiff proposed that the jury receive instructions on a "failure to warn" theory and a "design defect" theory of liability. PCC objected to the inclusion of the "design defect" instruction because, it claimed, plaintiff had not presented any evidence to support an instruction on the consumer expectation test. Specifically, PCC argued that the instruction was unwarranted because there was no evidence presented of a feasible alternative design. To this objection, the trial court stated:
 I will tell you. It seems to me there has been testimony certainly from experts that asbestos itself is a very dangerous substance and this proposition has been known for a long time. To make a product containing it when at least possibly it is believed that the knowledge was out there, it was potentially not only hazardous but for lack of a better word, a poisonous product.
 I think all that testimony is in the record and some of it is given by experts. I find it sufficient.
The court overruled PCC's objection and proceeded to instruct the jury. Following its deliberations, the jury returned a verdict in favor of plaintiff in the amount of $1,600,000 compensatory damages only. The jury found in favor of PCC, however, on plaintiff's claim for punitive damages.[3]
Because PCC's first two assignments of error are interrelated, they will be treated together:
 Assignment of Error No. 1: The trial court improperly permitted irrelevant evidence concerning Pittsburgh Corning's bad conduct toward its employees and neighbors at its manufacturing facilities leading to highly prejudicial closing arguments by Plaintiff relying on this improper evidence.
 Assignment of Error No. 2: The trial court improperly permitted irrelevant testimony regarding Pittsburgh Corning's alleged destruction of documents leading to highly prejudicial closing arguments by Plaintiff relying on this improper evidence.
PCC argues that Dr. Lemen's testimony about the plant conditions in Texas and Pennsylvania was not relevant. PCC's objection to this evidence was made in a motion in limine, which was denied by the trial court prior to trial.
Evid.R. 401 states:
 Relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than would be without the evidence.
Always, the admission of relevant evidence rests within the sound discretion of the trial court. State v. Williams (1983), 4 Ohio St.3d 53,446 N.E.2d 444. As to the denial of a motion in limine, the admission or exclusion of evidence by a trial court will not be reversed on appeal absent a clear and prejudicial abuse of discretion. O'Brien v. Angley
(1980), 63 Ohio St.2d 159, 407 N.E.2d 490. "The term `abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable."Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140.
In the case at bar, PCC argues that the trial court abused its discretion by denying PCC's motion in limine and thereby allowed Dr. Lemen to testify about the plant conditions in Texas and Pennsylvania, where it manufactured a variety of asbestos products including the pipe covering Mr. Cicchillo worked with. PCC maintains that the evidence of poor environmental conditions inside the plants and the fact that workers were not cautioned to use masks or respirators or told to remove their dust-covered work clothes before going home, was not relevant. It is undisputed that plaintiff had the burden at trial of proving not only that PCC failed to warn its employees about the dangers of asbestos but also that it knew about the hazardous nature of its products, including the pipe covering. R.C. 2307.71 et seq.
After reviewing the record before us, we conclude that plaintiff established PCC's knowledge through the testimony of Dr. Lemen, Carl Olm, and Ronald Francis. Dr. Lemen testified that asbestos was known to be dangerous as early as the 1930's. He told the jury about the asbestos information files he knew PCC kept through the years. Carl Ohm, a PCC works manager, told the jury about being instructed to destroy asbestos files and documents. Olm described the contents of one particular file. The file contained a report from the National Institute Of Occupational Safety and Health and reported the hazards associated with asbestos exposure.
Ronald Francis, the assistant works manager for PCC's Port Allegheny plant, testified by videotape and told the jury that in 1965 he visited a plant in England which manufactured a product similar to Unibestos. While there, Mr. Francis learned about improved dust control measures. He prepared a report which he submitted to PCC management. The report detailed alternate dust control systems which he thought would be helpful in controlling the environment in his plant. Mr. Francis' report also detailed the diseases associated with asbestos exposure, including asbestosis, cancer and mesothelioma.
Dr. Lemen described the terrible dust conditions that often existed at the Texas and Pennsylvania plants. Dr. Ayer described the ways in which asbestos can become airborne. Dr. Lemen told the jury about PCC's poor ventilation systems and the fact that its workers were unprotected from airborne asbestos particles. From this testimony, we conclude PCC had to know that the dust from the manufacture of Unibestos was dangerous.
Further, the record is clear that PCC participated in numerous public health studies that studied the hazards associated with asbestos. In those studies, PCC learned firsthand about the hazards of its own asbestos products precisely because of the conditions it allowed to occur and to keep occurring at its two manufacturing plants. And despite its knowledge that it is the airborne quality that makes asbestos hazardous, PCC, nonetheless, not only allowed it to be continually transmitted into its own plant environments and onto its workers, but also never warned others who were working with those very same products.
Plaintiff established part of her prima facie case on her product liability claim, through Dr. Lemen's testimony. PCC insists, however, that we view Dr. Lemen's testimony as being introduced for the sole purpose of showing that it "mistreated" its plant employees. We must reject PCC's characterization of the evidence. The jury could consider his testimony in deciding not only what PCC knew and when it knew it, but also the precise manner in which Mr. Cicchillo may have become ill, that is, by breathing in airborne asbestos dust particles. PCC does not dispute that asbestos becomes dangerous when it is released into the air. There is no disagreement between the parties that it is the airborne quality that make asbestos hazardous.
PCC further claims that the testimony from Dr. Lemen, even if relevant, was prejudicial because of the way plaintiff used it in closing argument. It is a well-settled rule of law that even if relevant, evidence is still inadmissible "if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury." Evid.R. 403. On the other hand, trial counsel is typically afforded great latitude in closing argument. Statev. Champion (1924), 109 Ohio St. 281, 289, 142 N.E. 141, 143. In determining whether the acceptable bounds of argument have been transgressed, however, a trial court has discretion and, unless an abuse of discretion can be shown, no error will be found.
In the case at hand, it should first be noted that PCC did not object during plaintiff's closing statements. Evid.R. 103(A)(1) requires that a party timely object when allegedly inadmissible evidence is introduced at trial. Failure to make a timely objection waives that objection. Statev. Stearns (1982), 7 Ohio App.3d 11, 14, 429 N.E.2d 1079. Without an objection in the case at bar, the court was not required to rule on the evidence and, in fact, did not rule. We, therefore, do not find any abuse of discretion regarding closing argument.
Moreover, we do not find that counsel for the plaintiff said anything during closing that created an atmosphere so "surcharged with passion or prejudice" that the court should have stopped him. Pesek v. UniversityNeurologists Association, Inc. (2000), 87 Ohio St.3d 495, 721 N.E.2d 1011
citing Jones v. Macedonia-Northfield Banking Co. (1937), 132 Ohio St. 341,351, 7 N.E.2d 544, 549. And we certainly find that the evidence had significant probative value under Evid.R. 403 and showed no "unfair prejudice" especially in light of the fact that the jury did not award any punitive damages. Nor does PCC point to any specific "prejudice" it suffered as a result of the closing statements of opposing counsel. Accordingly, we overrule PCC's first assignment of error.
In its second claimed error, PCC argues that Mr. Olm's testimony that he was told to destroy documents was not relevant and, as used by plaintiff's counsel in closing, proved prejudicial. We do not agree. Because plaintiff sought punitive damages against PCC, she had to prove that, despite its knowledge about the danger of asbestos, PCC not only failed to warn its employees, but also attempted to hide evidence of that knowledge. By deposition read to the jury, Mr. Olm stated that, while he worked for PCC, he knew that there was an "asbestos file" kept at the plant where he worked. When asked what the file included, Mr. Olm answered, "All of the information relating to the asbestos situation, correspondence, memorandum, etc." And when asked what happened to the file, Mr. Olm stated that "[a] representative from Pittsburgh came up and went through the file and selected certain things to be destroyed, which we did, and certain things to be taken back to Pittsburgh." Mr. Olm also testified that the person directing the "shredding" of the documents was the "Assistant to the President" of PCC, who initially asked for "any files regarding asbestos."
The record is clear that the documents described by Mr. Olm were destroyed. Counsel for PCC had ample opportunity to diminish any negative effect of Mr. Olm's testimony, not only on cross-examination but, perhaps more significantly, at trial by producing rebuttal evidence. In any event, the exact nature or importance of the documents or the weight of Mr. Olm's testimony is within the province of the jury. Simply because the evidence is damaging does not make it inadmissible.
Further, we find that Mr. Olm's testimony is relevant to proving malice. Any danger of unfair prejudice from this evidence, moreover, was outweighed by the probative value of the testimony. This conclusion is supported by the fact that the jury did not award punitive damages. Finally, we again note that PCC fails to specify the exact nature of any prejudice it suffered. Accordingly, this second claimed error is also without merit and is overruled.
 Assignment of Error No. 3: The trial court improperly instructed the jury regarding a design defect claim applying the consumer expectation test in the absence of evidence of a feasible alternative design.
The thrust of PCC's claim is two-fold. First, PCC claims that plaintiff was not entitled to an instruction on the consumer expectation test, which is part of a "design defect" theory of liability. According to PCC, the instruction was erroneous absent plaintiff presenting expert testimony that there was a feasible alternative design of its product during the time Mr. Cicchillo was exposed.
We reject this position; neither the statute (R.C. 2307.75) nor the Ohio Supreme Court require such evidence. To the contrary, R.C. 2307.75(F) expressly states that no evidence of a feasible alternative design is required if "the manufacturer acted unreasonably in introducing the product into trade or commerce." Contrary to PCC's claim, the record in this case amply shows that there were facts in evidence from which the jury could conclude that PCC, as the manufacturer, acted unreasonably in introducing Unibestos into commerce. We, therefore, concur in the court's assessment of the evidence, which justified the instructions given.
In its second argument, PCC also claims that the trial court erred in deciding that the jury should be instructed on alternate theories of liability, that is, design defect and a failure to warn theory. Such an instruction was in error, PCC argues, because throughout the case, plaintiff led PCC to believe it had to present only one defense. PCC maintains that plaintiff's pleadings and overall litigation strategy alleged liability exclusively based on PCC's failure to warn Mr. Cicchillo about the dangers of asbestos. PCC argues that, at trial, regardless of the actual evidence presented, the jury should have received only one set of instructions involving a "failure to warn" theory of liability. We reject this argument because this particular claim of error invokes the "two-issue rule" recognized by the Ohio Supreme Court most recently in Wagner v. Roche Laboratories (1999),85 Ohio St.3d 457, 709 N.E.2d 162.
In brief, the "two-issue rule" states that if a jury receives instruction on two possible theories of liability, as in the case at bar, and the objecting party fails to submit a device, usually interrogatories, by which the jury's specific basis for determining liability can be ascertained, then no error will be found. The Ohio Supreme Court explained:
 The two-issue rule is, that error in the charge of the court dealing exclusively with one of two or more complete and independent issues required to be presented to a jury in a civil action will be disregarded, if the charge in respect to another independent issue which will support the verdict of the jury is free from prejudicial error, unless it is disclosed by interrogatories or otherwise that the verdict is in fact based upon the issue to which the erroneous instruction related. (Citations omitted.) The rule generally applies "where there are two causes of action, or two defenses, thereby raising separate and distinct issues, and a general verdict has been returned, and the mental processes of the jury have not been tested by special interrogatories to indicate which of the issues was resolved in favor of the successful party * * *."
Wagner at 460, citing H.E. Culbertson Co. v. Warden (1931),123 Ohio St. 297, 303, 175 N.E. 205, 207.
In the case at bar, there were no special interrogatories given to the jury except for one relating to punitive damages. Following the reading of the jury's verdict, the trial court asked if anyone wanted the jury polled, to which PCC's attorney responded "No, Your Honor." Given the general verdict delivered by the jury, there is no opportunity for this court to determine which issue the jury focused upon in rendering its verdict in favor of plaintiff. PCC is correct that the rule does not apply if the jury is charged on an issue for which the record offers no factual support.
We find that plaintiff did present sufficient factual evidence to support an instruction on both design defect and failure to warn. The evidence at trial showed that many of PCC's asbestos-containing products gave off hazardous dust particles. Dr. Lemen described the specific pipe covering Mr. Cicchillo worked. He stated further the company knew the covering was dangerous once its particles became airborne. PCC never altered this design nor did it ever provide the necessary warnings. The record confirms that the instructions given were proper. We find, therefore, that the two-issue rule applies in this appeal and that the trial court did not err.
Where the rule applies, moreover, "an appellant, in order to secure reversal of a judgment against him, must not only show some error but must also show that that error was prejudicial to him." Wagner at 460 citing Smith v. Flesher (1967), 12 Ohio St.2d 107, 110, 233 N.E.2d 137,140. PCC has failed to demonstrate such prejudice.
Further, a reviewing court will not reverse the decision of a trial court relating to whether sufficient facts existed to support a jury instruction absent an abuse of discretion. Shumar v. Kopinsky (Aug. 30 2001), Cuyahoga App. No. 78875, unreported, 2001 Ohio App. LEXIS 3831;State v. Barnd (1993), 85 Ohio App.3d 254, 619 N.E.2d 518.
We also reject PCC's position because there were no special interrogatories from which we can glean the basis for the jury's verdict. Because the record supports the alternate theories of liability for which the jury received instructions, we cannot say that PCC suffered any prejudice or that the trial court committed an abuse of its discretion. Accordingly, assignment of error No. 3 is overruled.
 Assignment of Error No. 4: The trial court erred in refusing to permit Pittsburgh Corning to present certain evidence regarding Mr. Cicchillo's asbestos exposure in the Navy and in refusing to permit Pittsburgh Corning to argue this exposure as an alternate cause for his mesothelioma.
PCC argues that the trial court erred in denying its motion in limine
to permit evidence of Mr. Cicchillo's exposure to asbestos while he served in the Navy for fourteen months aboard a Navy ship. As noted above, in an appellate review of a trial court's decision to admit or exclude evidence, the standard is whether the trial court committed an "abuse of discretion." O'Brien, supra; Blakemore, supra.
In the case at bar, PCC argued for the admission of military specifications which showed that all naval ships at the time of Mr. Cicchillo's service were insulated with materials containing asbestos. PCC also wanted to introduce evidence that the rates of exposure on the ships, particularly in "confined spaces," were higher than that in steel mills like the one where Mr. Cicchillo was employed. The trial court denied PCC's motion in limine because the proffered evidence was too speculative. Such a determination is also subject to review according to an "abuse of discretion" standard. AGF, Inc. v. Great Lakes Heat TreatingCo. (1990), 51 Ohio St.3d 177, 555 N.E.2d 634.
We discern no abuse of discretion by the trial court in denying PCC's motion, particularly because PCC was not prepared to identify the specific ship Mr. Cicchillo served on or whether he worked in the type of "confined spaces" the statistics referred to. PCC even admits that "[i]t sought only to offer evidence of general asbestos exposure in the Navy * * *." We agree with the trial court that the proffer given was far too speculative to present to the jury. We further observe that the record here is devoid of any evidence, presented or proffered, which related directly to Mr. Cicchillo's service records.
And we reject PCC's claim that the jury should have been allowed to hear the evidence so that it could make "reasonable inferences" on the issue of causation. The evidence, as described by PCC, was too speculative to establish causation. Moreover, the record here fully supports the jury finding that Mr. Cicchillo's mesothelioma was the result of his more than 40-year exposure to the asbestos he worked with and around on a continuous basis. This assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover of appellant her costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
COLLEEN CONWAY COONEY, J., CONCURS; ANN DYKE, J., CONCURS IN JUDGMENTONLY.
[1] Appellant filed a motion for new trial, which was denied by the trial court on February 5, 2001 following proceedings in the U.S. Bankruptcy Court.
[2] There is no dispute that Mr. Cicchillo had mesothelioma. At trial, the parties disputed the causation element of plaintiff's products liability claims.
[3] The verdict was reduced, by set-offs, to $866,820.