[Cite as *Cook v. Admr., Bur. of Workers' Comp.*, 2017-Ohio-5849.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

|  |  |  |
|---|---|---|
| RICKY COOK, | : | |
| Plaintiff-Appellee, | : | CASE NO. CA2017-01-004 |
| | : | O P I N I O N |
| - vs - | | 7/17/2017 |
| | : | |
| ADMINISTRATOR, BUREAU OF WORKERS' COMPENSATION, et al., | : | |
| | : | |
| Defendant-Appellant. | : | |
| | : | |

CIVIL APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
Case No. CV2015-09-2058

Hochman & Plunkett Co., LPA, Gary D. Plunkett, 3033 Kettering Blvd., Point West, Suite 201, Dayton, Ohio 45439, for plaintiff-appellee

Taft Stettinius & Hollister LLP, Andrew R. Thaler, 425 Walnut Street, Suite 1800, Cincinnati, Ohio 45202, for defendant-appellant, Rizzo Bros., Inc.

**PIPER, J.**

{¶ 1} Defendant-appellant, Rizzo Bros., Inc., appeals a Butler County jury verdict entitling plaintiff-appellee, Ricky Cook, to participate in the workers' compensation fund. Rizzo also appeals the Butler County Court of Common Pleas' subsequent decision denying its motion for a new trial. For the reasons discussed below, we affirm the jury verdict and the

court's decision.

**{¶ 2}** In January 2015, Cook applied for workers' compensation benefits. Cook alleged that he suffered an injury on July 3, 2014, while working for Rizzo, a commercial painting company. In June 2015, the Industrial Commission approved Cook's claims for disc herniation and lumbar strain. Rizzo appealed to the common pleas court in September 2015. Cook's complaint alleged that the injury occurred "on or about" July 3, 2014.

**{¶ 3}** The case proceeded to a jury trial in August 2016. Cook – who was 50 years old at the time of trial – testified that he was a career residential and commercial painter. He worked at several painting companies but spent most of his career working for Rizzo, where he began in 1998 or 1999. Cook testified that painting was physically demanding work with long hours: "[t]hey want to – the owners wants to make money and they demand you to bust your butt and it's seven days a week from daylight to dark." [sic] Cook also testified that before July 2014 he had never taken time off work for low back pain.

**{¶ 4}** On July 3, 2014, Cook was working for Rizzo, painting handrails and a steel column on a stairway in a dorm at Miami University in Oxford. Holding a paint roller, Cook bent down and then "bent back up and when I did there was a loud pop in my back like a stick had broke, a bone had broke, or something. And it scared me." Cook testified that he felt pain when he heard the "pop" but it went away. He immediately told his supervisor on the job site about the "pop," who "laughed it off."

**{¶ 5}** Cook began to suffer pain in his lower back later that week. The pain steadily increased for weeks until it became unbearable. Cook described the pain as a 10 out of 10 and he eventually went to the emergency room.

**{¶ 6}** Dr. Bradley Patterson, Cook's primary care physician, testified for Cook. Cook complained to Dr. Patterson of significant left side low back pain that continued down into his left leg. After attempting unsuccessfully to treat Cook's pain with steroid shots and muscle

relaxers, Dr. Patterson sent Cook to get an MRI.

{¶ 7} An MRI revealed that Cook's L4 vertebrae had slipped forward and above his L5 vertebrae, a condition called spondylolisthesis. In addition, the L4-L5 disc (the vertebral disc between the L4 and L5 vertebrae), herniated on its left side. This herniation caused pressure on the L5 nerve root, which runs down the left leg. This explained the pain in Cook's left leg. Dr. Patterson opined that L4-L5 disc herniation was consistent with the work injury that Cook described. Dr. Patterson testified that about two years before July 2014, Cook complained to him of mild low back pain. However, Cook did not complain at that time of any pain in his leg. Accordingly, Dr. Patterson felt that Cook was only suffering lumbar strain in 2012.

{¶ 8} Dr. Robert Whitehead also testified for Cook. Dr. Whitehead specializes in sports medicine. The Ohio Bureau of Workers' Compensation retained Dr. Whitehead to review Cook's medical records and render an opinion as to whether Cook's condition appeared consistent with the claimed injury. Dr. Whitehead testified that Cook's claim of bending his back and straightening it was a plausible mechanism for a lower spine injury and that repetitive bending could cause a disc to herniate. He said that the "pop" Cook heard may have been tearing of a muscle or the disc. He did not believe that Cook herniated his disc prior to July 2014 and the "pop" was "something new." In this regard, Dr. Whitehead found important that the MRI revealed that a disc was compressing a nerve. Dr. Whitehead said that with this neurocompression there would almost always be pain down the leg. Dr. Whitehead said that if he assumed the disc herniated before July 2014, the July 3 event was a "substantial aggravation."

{¶ 9} Dr. Steven Wunder testified for Rizzo. Dr. Wunder specializes in disorders of the spine. Dr. Wunder examined Cook in April 2015. He said that Cook provided him with uncertain responses concerning the cause of his herniated disc. Cook told him his low back

pain began with a fall when Cook tripped over a spray line and that "he really did not even remember any kind of event on July 3rd." Dr. Wunder had to prompt Cook to get him to talk about the event of July 3rd. Cook told Dr. Wunder, "I was doing terrible up to then already; I felt a pop in my back." Dr. Wunder said Cook told him he was uncertain whether the "popping" occurred in June or July. Cook eventually told Dr. Wunder that his bone "popped" while he was painting a column.

{¶ 10} Dr. Wunder opined that bending over and straightening could not cause a herniated disc. Dr. Wunder believed that Cook suffered a "spontaneous" disc herniation, which was degenerative in nature. When the herniation occurred was "anyone's guess." Dr. Wunder agreed that the herniation was symptomatic in July. However, Dr. Wunder opined, within a reasonable degree of medical certainty, that the "popping" that occurred on July 3, 2014 did not cause the L4-L5 disc herniation or the lumbar strain.

{¶ 11} After both sides rested, the trial court provided the jurors with jury instructions agreed to by both parties. In relevant part, the jury instructions provided:

> *The Workers' Compensation Law of Ohio provides that employees who are injured or develop occupational diseases in the course of and arising out of their employment are entitled to participate in the Workers' Compensation fund. To participate in the benefits of the Workers' Compensation Fund means to receive benefits from it.*
>
> *\* \* \**
>
> *The law requires that Plaintiff Ricky Cook must prove that he sustained an injury in the course of his employment at Rizzo Bros Inc.*
>
> An employee is in the course of employment while performing the obligations of his contract of hire; he is in the course of employment when performing some required duty done directly or incidentally in the service of the employer.
>
> An injury arises out of the employment when it is directly and proximately caused by something that occurred as part of the activities, conditions, and risks of the workplace.

*Plaintiff Ricky Cook must prove that the incident of July 3, 2014 was the direct and proximate cause of his lumbar strain and paracentral disc herniation left L4-5.*

Plaintiff alleges that on July 3, 2014, he suffered an incident in the course of and arising out of his employment with defendant Rizzo Bros Inc. The plaintiff alleges that on July 3, 2014 he sustained a lumbar sprain and paracentral disc herniation left L4-5 in the course of and arising out his employment with Rizzo Bros. Inc. He filed a workers' compensation claim alleging injuries as a result of the painting event on July 3, 2014.

* * *

Under Ohio's Workers Compensation Law, "injury" includes any injury, whether caused by external accidental means or accidental in character and result, received in the course of, and arising out of, the injured employee's employment.

Injury includes physical harm that develops over time as the gradual result of the injured employee's work on job-related duties.

Injury does not include an injury or disability caused primarily by the natural deterioration of tissue, and organ, or body part. [sic]

(Emphasis added.)

{¶ 12} The jury began deliberating. Repeatedly throughout its deliberations, the jury sent notes to the court with various questions. Generally, the questions concerned the evidence presented in the trial and the jurors' roles in reviewing the evidence. The third note from the jury read:

> (1) Do we have to be certain that the disc herniation happened on July 3rd?
>
> (2) Or do we just have to determine that the disc herniation happened as a result of [Cook's] work at Rizzo?

{¶ 13} Rizzo argued that the response to first question should be that the jury must be certain that Cook's disc herniated on July 3, 2014. Cook argued that it was only necessary that the jurors believed that the "popping" event occurred as Cook described it, while he was working, and that the event was a proximate cause of the disc herniation. After an extended

discussion, the court decided to tell the jury to simply refer to the jury instructions.

{¶ 14} The jury resumed deliberations and then sent out another note with two questions. The note read:

> If we believe defendant [sic] was hurt on or OR ABOUT July 3rd. Can we vote yes? OR do we need to be certain the incident happened on 3rd of July? The jury instructions are interpreted both ways and have us split.[1] [sic]

(Emphasis in original.)

{¶ 15} The parties and court engaged in another extended discussion and debate concerning the proper response to these questions. Rizzo again argued that the jury should be instructed it must find that the claimed injuries occurred on July 3, 2014. Rizzo argued that the evidence at trial was that the event occurred on July 3, 2014 and therefore the jury instructions had to comport with the evidence. Cook argued that the jury could find in favor of him so long as the jurors concluded that the incident occurred on or about July 3, 2014. Eventually Cook located and pointed the court to case law holding that the date of injury is not a material element in a worker's compensation claim. Based on this case law, the court provided the following response to the jury, over Rizzo's objection:

> You do not need to be certain the injury happened on July 3, 2014.
>
> You must be convinced by a preponderance of the evidence that Mr. Cook was injured in the course of his employment [at] Rizzo Brothers.
>
> The fact that the date may be unknown may be used by you in casting doubt on whether the injury occurred during the course of Mr. Cook's employment.
>
> Please be mindful of all testimony presented in reference to any dates testified to.

{¶ 16} Ultimately, the jury rendered a verdict in favor of Cook, finding that he was

---

1. The note also specifically referred to three paragraphs within the jury instructions, which are emphasized in our recitation of the jury instructions in ¶ 11 above.

entitled to participate in the workers' compensation fund for the disc herniation claim. The jury rendered a verdict against Cook with respect to the lumbar strain claim.

{¶ 17} Rizzo later moved for a new trial, arguing that a trial irregularity occurred and that the court made an error of law when it instructed the jurors that they need not be certain Cook's injury occurred on July 3, 2014. The court denied Rizzo's motion. Rizzo presents two assignments of error in this appeal.

{¶ 18} Assignment of Error No. 1:

{¶ 19} THE TRIAL COURT'S RESPONSE TO THE JURY'S QUESTION CONCERNING THE ALLEGED DATE OF INJURY WAS ERRONEOUS AND CONTRARY TO THE EVIDENCE PRESENTED AT TRIAL AS WELL AS THE AGREED UPON JURY INSTRUCTIONS AND HIGHLY PREJUDICIAL TO THE APPELLANT RIZZO BROS., INC.

{¶ 20} Rizzo argues that the court's response to the jury's two questions was erroneous because it failed to comport with the evidence presented at trial. Rizzo claims all evidence at trial indicated Cook's injury occurred on July 3, 2014 and no other date. Rizzo additionally argues that the court erred to the extent it relied upon the case law provided to it by Cook while the parties were debating the issues raised by the jury questions.

{¶ 21} Cook counters that there was a factual dispute over the date of the injury because Rizzo's evidence suggested an injury date other than July 3, 2014. And Cook argues that the case law he presented to the court was relevant to the case and established that he was not required to prove the exact date he suffered the herniated disc.

{¶ 22} "A trial court has the duty to instruct the jury as to the applicable law on all issues presented in the case that are supported by the evidence." *Enderle v. Zettler*, 12th Dist. Butler No. CA2005-11-484, 2006-Ohio-4326, ¶ 35. Determining whether a jury instruction is relevant rests within the sound discretion of the trial court. *Id.* When considering the appropriateness of a jury instruction, or when a specific jury instruction is in

dispute, a reviewing court must examine the instructions as a whole. *Id.* at ¶ 36. "If, taken in their entirety, the instructions fairly and correctly state the law applicable to the evidence presented at trial, reversible error will not be found merely on the possibility that the jury may have been misled." *Withers v. Mercy Hosp. of Fairfield*, 12th Dist. Butler No. CA2010-02-033, 2010-Ohio-6431, ¶ 17, quoting *Wozniak v. Wozniack*, 90 Ohio App.3d 400, 410 (9th Dist.1993).

{¶ 23} In determining its response to the jurors' final question, the trial court relied on *Amie v. General Motors Corp.*, 69 Ohio App.2d 11 (8th Dist.1980). In *Amie*, the employer appealed a worker's compensation decision in favor of an injured worker. *Id.* at 11-12. The injured worker and a co-worker both testified at trial that the worker's injury occurred on September 23, 1974. *Id.* at 12. However, the employer introduced payroll records indicating that the worker was not paid for work that day. *Id.* at 14. The employer argued that the payroll records were "conclusive" evidence that the worker was not at work on September 23, 1974. *Id.* The court of appeals rejected the employer's argument, finding that the payroll records were not conclusive evidence but were merely circumstantial evidence of the worker's presence at the workplace. *Id.* at 14-15. Furthermore, the court held that the exact date of injury is not a necessary element of a claim in a workers' compensation case. *Id.* at 15, citing *Wills v. Industrial Comm.,* 66 Ohio L. Abs. 577, 1950 Ohio App. LEXIS 844 (2d Dist.1950); *Industrial Comm. v. Motts*, 17 Ohio L. Abs. 642, 1934 Ohio Misc. LEXIS 1211 (2d Dist.1934).

{¶ 24} In *Wills,* the Second District Court of Appeals reversed and remanded a case where the jury returned a verdict finding against the plaintiff, who sought to obtain workers' compensation benefits on behalf of the estate of a deceased worker. The verdict form submitted to the jury required it to find that the death of the worker was the result of an injury that occurred on June 15, 1943. *Id.* at *3. At the trial, several workers testified that an

accident occurred on June 15, 1943 when a "sand slinger" machine injured the deceased worker. The plaintiff presented medical testimony that the injuries suffered by the worker would have led to his death. *Id.* However, the defense introduced evidence indicating that the sand slinger was not in use in June 1943 and had not been used since July 1942. *Id.* at *3-4.

{¶ 25} The court of appeals held that the verdict form misled the jury into believing that the date of the incident was a material aspect of a workers' compensation claim. *Id.* at *4. Stated otherwise, the verdict form required the plaintiff to establish a noncontrolling fact as an essential element of his case. The court held that the question that should have been asked of the jurors was whether the worker's death was the result of an injury "received in the course of and arising out of his employment." *Id.* The court noted that it is "common knowledge that witnesses entirely truthful may be mistaken in fixing a definite date of occurrence and yet be correct as to the happening of the event." *Id.* at *5.

{¶ 26} Rizzo argues that *Amie* is distinguishable from this case because there was a factual dispute in *Amie* as to the date of the injury and there was no similar factual dispute in this case.[2] However, even if we assumed that there was no factual dispute as to the date in this case, this is a distinction without a difference. A fact, whether it is disputed or not, is only "material" if it affects the outcome of the litigation. *Butler v. Wyndtree Housing Ltd. Partnership*, 12th Dist. Butler No. CA2011-03-056, 2012-Ohio-49, ¶ 13. Despite arguing that we should reject *Amie*, Rizzo never satisfactorily explains why the precise date of Cook's injury was a material fact at trial.

---

2. The record belies Rizzo's claim that the injury date was undisputed. As discussed previously, Rizzo's expert witness, Dr. Wunder, testified concerning Cook's inability to describe what happened on July 3 and that the initial injury may have occurred in June, when Cook allegedly tripped over a spray line. Cook also points out that Rizzo introduced into evidence a medical record and time sheets suggesting that the accident happened on July 4, 2014. In its reply brief, Rizzo contends that it did not submit this evidence to prove that the accident happened on a day other than July 3, 2014, but rather to impeach Cook's credibility. Regardless of Rizzo's motivations, the jury clearly considered the evidence, which likely was the cause of their difficulty with the agreed jury instructions.

**{¶ 27}** We find no error in the court's instruction to the jurors that they need not be certain that the injury occurred on July 3, 2014, but instead must find by a preponderance of the evidence that Cook was injured in the course of his employment with Rizzo. Based on the evidence presented at trial, the jury could conclude by a preponderance of the evidence that Cook suffered a herniated disc in the manner he described while painting dorms for Rizzo, while simultaneously concluding that Cook may have been mistaken as to the precise day in July when the injury occurred.

**{¶ 28}** We agree with the holding set forth in *Amie* and the rationale discussed in *Wills*. The date of the injury is not a material factual issue. Certainly, an employer's or the Bureau's ability to create doubt as to the worker's claimed date of injury could convince the jury that the worker failed to prove that the injury took place while working. But the failure to prove that an injury occurred on a specific date is not outcome determinative if the plaintiff can otherwise prove an injury arising out of work.

**{¶ 29}** Rizzo also argues that the court's response allowed the jury to consider an alternate theory of how the injury occurred, i.e., that the herniated disc developed gradually over time as opposed to being directly caused by the event of July 3, 2014. Rizzo argues that "no evidence was presented that the injury had developed over time." However, Rizzo ignores the testimony of its own expert. Dr. Wunder opined that Cook's herniated disc was the result of degeneration that "would have taken months and months to develop."

**{¶ 30}** Rizzo urges us to follow the holding of *Engle v. Detroit Diesel Allison Div. GMC*, 2d Dist. Montgomery No. CA 9550, 1986 Ohio App. LEXIS 6954, where the appeals court reversed a verdict in favor of a worker where the trial court's jury instruction permitted the jury to consider an alternate theory of medical causation. *Id.* at *7. In *Engle*, the jury instructions informed jurors that they could find that a compensable injury occurred whether the injury was gradual or sudden. *Id.* at *2-3. The court reversed because there was no

testimony presented concerning a theory of gradual onset injury. *Id.* at *5. Rizzo argues that this case is like *Engle* because the jury could consider "other possible dates of injury, and other mechanisms of injury." However, we have already concluded that Rizzo itself submitted the evidence that would support other possible dates of injury and other mechanisms of injury. Accordingly, *Engle* is inapposite.

{¶ 31} The parties chose to use general verdict forms as opposed to jury interrogatories so there is nothing in the record that would suggest that the jury considered alternate theories of medical causation. However, the jury's final note to the court strongly suggests that it did not render a verdict for Cook based on a theory of medical causation not presented at trial. Again, the jury's noted asked: "[i]f we believe defendant [sic] was hurt on or <u>OR ABOUT</u> July 3rd. Can we vote yes?" (Emphasis in original.) The note impliedly reveals that the jury: (1) believed that Cook experienced an injury in the manner he described while working for Rizzo; (2) accepted Dr. Patterson's and Dr. Whitehead's medical causation testimony over that of Dr. Wunder; and (3) was understandably confused that – despite the two foregoing conclusions – the jury instructions indicated it must be convinced that Cook's injury occurred precisely on July 3, 2014. Once the court understood that the jury instructions were improper by its reading of *Amie*, it correctly instructed the jury that they need not be certain that the injury occurred on July 3, 2014, but could consider any uncertainty regarding the injury date as to whether Cook proved he suffered an injury at work.

{¶ 32} We find that the court properly instructed the jury with a fair and correct statement of the law. Therefore, the court did not abuse its discretion. This assignment of error is overruled.

{¶ 33} Assignment of Error No. 2:

{¶ 34} THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT DENIED THE RIZZO BROS., INC.'S MOTION FOR A NEW TRIAL UNDER CIVIL RULE 59(A)(1) AND

(A)(9).

{¶ 35} Civ.R. 59(A) sets forth nine grounds under which a party may seek a new trial. Relevant to this assignment of error, the court may grant a new trial for: (1) "[i]rregularity in the proceedings of the court * * * by which an aggrieved party was prevented from having a fair trial" and, (2) "[e]rror of law occurring at the trial and brought to the attention of the trial court by the party making the application." Civ.R. 59(A)(1) and (A)(9). The decision to grant or deny a motion for a new trial is reviewed on appeal under an abuse of discretion standard of review. *Citibank v. Ebbing*, 12th Dist. Butler No. CA2012-12-252, 2013-Ohio-4761, ¶ 57. An abuse of discretion in ruling on a motion for a new trial connotes an unreasonable, arbitrary, or unconscionable attitude on the part of the trial court. *Domestic Linen Supply & Laundry Co. v. Kenwood Dealer Group*, Inc., 109 Ohio App.3d 312, 325 (12th Dist.1996).

{¶ 36} Rizzo reiterates the arguments it raised in support of its first assignment of error with respect to the trial court's denial of its motion for a new trial. Rizzo argues that the irregularity occurring at trial was that the court provided a jury instruction that did not comport with the evidence presented at trial. And Rizzo argues that the court's application of the holding and rationale of *Amie* was erroneous as a matter of law. For the reasons discussed in response to the first assignment of error, we conclude that no irregularity occurred at trial and we do not find that Rizzo was denied a fair trial. Furthermore, we find that the court's application of the holding of *Amie* in response to the jury's note was proper and not an error of law. Accordingly, we find no abuse of discretion in the court's denial of Rizzo's motion for a new trial. This assignment of error is therefore overruled.

Judgment affirmed.

S. POWELL, P.J., and RINGLAND, J., concur.